UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| ROBERT LEE HARRIS, JR., | ) |
| | ) |
| Plaintiff | ) |
| | ) |
| v. | ) 1:11-cv-00472-GZS |
| | ) |
| MARTIN A. MAGNUSSON, *et al.*, | ) |
| | ) |
| Defendants | ) |

**ORDER ON MOTION FOR STAY**
**RECOMMENDED DECISION ON MOTION FOR SUMMARY JUDGMENT**

Robert Lee Harris, Jr., currently in custody in the State of Ohio serving the remainder of an Ohio sentence imposed in 1975, has sued six Maine prison officials claiming that they violated his constitutional rights by holding him in Maine's custody for longer than he should have been held.[1] Conceding that the Maine Department of Corrections made an error in the sentence calculation, the defendants filed a motion for summary judgment grounded on the lack of any harm to the plaintiff resulting from the miscalculation of his Maine sentence, since he had an Ohio sentence to follow against which he received credit for the "extra" time he had spent in federal prison "illegally" incarcerated on the Maine sentence. (Mot. Sum. J., ECF No. 18.) Harris responded to that motion by asking both that the defendants be denied summary judgment and that he be granted a stay pending the entry of a judgment in a federal habeas corpus action he has instituted in Ohio in an attempt to challenge the Ohio Parole Board's determination in his case. (ECF Nos. 21 & 22.) I now deny his request for a stay and I recommend that the Court grant the six defendants' motion for summary judgment.

---

[1] Harris was serving his Maine sentence in a federal prison pursuant to an agreement with the Maine Department of Corrections. The place of his incarceration is not relevant to the issues raised by defendants' motion.

## Undisputed Material Facts[2]

In his original complaint, Harris identified the six defendants as the Commissioner of the Maine Department of Corrections, the Superintendent of the Maine Correctional Center, and four correctional department employees associated with the classification office at the state correctional facilities. It appears the commissioner is sued in a respondeat superior capacity, as he does not appear to have been directly involved in these events, although he did receive copies of some items of correspondence. Superintendent Scott Burnheimer sent Harris a memorandum on May 23, 2005, that apparently incorrectly computed his release date, but the memorandum made clear that the projected release was a maximum date and that Harris could continue to earn good time credits to reduce his projected release date of October 23, 2016. Thus, it is impossible to ascertain how inaccurate Burnheimer's memorandum actually was, but the record evidence suggests that approximately nineteen additional months were added to Harris's sentence. Based on the exhibits submitted with the complaint, it appears that two of the classification officers named as defendants, Jeanne Blais and Cheryl Rackliff, were responsible for discovering and reporting the alleged error in the sentence calculation in May 2005. Rackliff and another classification officer, Stephen Maxwell, recomputed the projected release date. (ECF No. 1-4 at 1.) It also appears that Maxwell is being sued in part because of his role in dealing with Harris's denied request that he be returned to Ohio under the Interstate Agreement on Detainers while he

---

[2] Harris did not include the required opposing statement of material facts, making it impossible for the defendants to file a reply statement of material facts. See D. Me. Local Rule 56(c)-56(d). In fact, Harris makes no effort to dispute the facts put forward by the defendants, as required by the rules. See Fed. R. Civ. P. 56(c) and D. Me. Local Rule 56(c). Therefore, those facts are deemed admitted.
    Moreover, he admits the most crucial fact, that he was given credit toward his Ohio sentence. As for additional "facts" that he is apparently trying to put forward, he only asserts their existence in the course of making his arguments, instead of supporting them with citations to record materials, as required by the rules. See Fed. R. Civ. P. 56(c) and D. Me. Local Rule 56(c). Therefore, they may be disregarded, but I have made reference to certain of those factual assertions in the undisputed material facts, as best I have been able to decipher them based on Harris's written materials submitted with his complaint and in connection with his motion to stay/response to the motion for summary judgment.

was still incarcerated at the Maine State Prison serving the initial portion of his Maine sentence. (Sur-reply to Mot. Sum. J., ECF No. 27 at 5.) The possibility of Harris's early return to Ohio had been raised by Justice Lipez, the Maine sentencing judge, in 1991. (Id.) However, Harris's own exhibit (ECF No. 1-7) suggests that his return could not be facilitated not because of anything Maxwell did, but rather because of overcrowding in Ohio's prisons. It is difficult to decipher why Maxwell is now being sued for events that occurred in 1991, and his role in the 2005 sentencing miscalculation appears to be limited to number crunching after being advised of the actual date of the offense by Blais and Rackliff. Another named defendant, Carl McHatten, explained the recalculation of Harris's sentence on November 5, 2007, noting that the maximum projected release date was then October 14, 2014, with the possibility of additional reductions (ECF No. 1-4 at 3-5.) In actuality, the sentence should have ended on September 20, 2009, because the 2005 recalculation was incorrect. In any event, it is difficult to ascertain how certain of these particular named defendants individually violated Harris's constitutional rights and are proper defendants under 42 U.S.C. § 1983. However, the defendants' motion does not dwell on technical pleading deficiencies, if any, pertaining to each of the defendants, and does not include any background information regarding the named defendants in the statement of undisputed facts set forth below. That factual recitation relies primarily on the affidavit of a representative of the Ohio Department of Rehabilitation and Correction and sets forth the basis of the State of Maine's claim of "no harm, no foul" (Mot. Sum. J. at 1) supporting the entry of summary judgment in their favor.

     Melissa L. Adams is the Chief of the Bureau of Sentence Computation in the Division of Legal Services of the Ohio Department of Rehabilitation and Correction. In this capacity, she oversees the computation of sentences of imprisonment imposed by the Ohio courts and to be

served by persons admitted to the Ohio Department of Rehabilitation and Correction. Harris was admitted to that department on March 17, 1975, to serve a sentence of 3 to 20 years. His maximum expiration date on that sentence was computed to be December 16, 1993, after consideration of jail time credit.

On December 4, 1980, Harris escaped from the Ohio prison. On July 19, 1991, he was admitted to the Maine Department of Corrections to serve a sentence of 20 years to be followed by a consecutive sentence of 10 years. Harris was released from his consecutive Maine sentence and returned to Ohio on April 7, 2011. Harris had remained in an absent without leave status (AWOL) on his Ohio sentence until he was returned to Ohio's custody on April 7, 2011. As a result, his maximum sentence expiration date in Ohio was recomputed to be April 13, 2024. Harris should have been released from his Maine sentence and made available to Ohio to recommence his Ohio sentence on September 20, 2009. Instead, he was held in federal prison purportedly serving his Maine sentence under a contract with Maine from September 20, 2009, until April 7, 2011. Subsequently, Maine provided documentation to Ohio indicating that Harris should have been released from his Maine sentence on September 20, 2009. Based on the foregoing information provided by the State of Maine, Ohio adjusted the computation of Harris's Ohio sentence and changed his maximum sentence expiration date to September 27, 2022. Harris was given credit against his Ohio sentence for all of the days he spent in federal prison between the date he should have been released from his Maine sentence and made available to Ohio to recommence his Ohio sentence (September 20, 2009) and the date he was in fact returned to Ohio to recommence his Ohio sentence (April 7, 2011).

Although not set forth directly in defendants' statement of undisputed facts, it appears that the sentencing calculation error arose because of the fact that Harris committed his Maine

4

crimes prior to October 1, 1983, when a new good time law went into effect. Harris fled the State of Maine and was in Canada for a considerable period of time and was not returned to the State until 1990. Although sentence was imposed in 1991 for offenses committed prior to 1983, the State of Maine came to agree that Harris was entitled to have his good time calculated under more generous post-1987 good time provisions. (Memorandum of William Stokes, Me. Deputy AG, filed in Harris v. Ebbert,[3] 1:10-cv-00336-WWC-PT (M.D. Pa. 2010), ECF No. 1-2). This concession resulted in the final recomputation of Harris's release date in April 2011 and his immediate return to Ohio's custody.

Much of Harris's Motion to Stay and response to the motion for summary judgment is devoted to a discussion of his pending case in the Southern District of Ohio, Harris v. Warden, 1:12-cv-00261-SAS-SKB (S.D. Ohio 2012). Harris has brought an action pursuant to 28 U.S.C. § 2254(d)(1) & (2), alleging that the Ohio conviction is now void because he was returned to prison years ago prior to his escape without being given an opportunity for a hearing before the Ohio Parole Board. When he finally went before the Ohio Parole Board on August 11, 2011, the Board was not informed about the illegal detention pursuant to the Maine sentence. He was only credited with the additional time served after the Ohio Parole Board determined that it would not reconsider parole for another ten years. It appears that Harris's argument centers around the theory that once he obtains relief in the § 2254 case in Ohio, the illegal detention under the Maine conviction will no longer be a "no harm, no foul" situation and the State's unusual defense will have evaporated. Therefore he wants this Court to stay its decision on the

---

[3] Harris has litigated this matter not only in Maine and Ohio, but he also filed a petition in Pennsylvania pursuant to 28 U.S.C. § 2241 against both Maine and federal authorities claiming he was being illegally detained in a federal facility pursuant to the Maine sentence. That Pennsylvania litigation resulted in the State's concession that Harris was entitled to have been released in 2009. The District Court judge in Pennsylvania declined to convert Harris's habeas petition into a civil action for damages, noting that Harris was free to bring such an action in an appropriate venue. (Order, 1:10-cv-00336-WWC-PT (M.D. Pa. June 22, 2011), ECF No. 1-1.)

defendants' motion until the Ohio case has been resolved. Thereafter Harris claims he will be entitled to both compensatory and punitive damages from the state actors responsible for his illegal detention from September 20, 2009, to April 7, 2011.

### Discussion

Harris alleges that defendants violated his Fifth, Eighth, and Fourteenth Amendment rights by causing him to be incarcerated after his sentence expired. He also claims a violation of 5 U.S.C. § 552 with regard to the previously dismissed federal defendants related to federal good time allowances.[4] In regard to claims of extended illegal detention on state court convictions, "[m]ost courts that have considered overdetention claims have agreed that they are properly channeled through the Due Process Clause of the Fourteenth Amendment . . . ." Barnes v. District of Columbia, 242 F.R.D. 113, 118 (D.D.C. 2007) (citing cases). Those cases have held that plaintiffs state cognizable claims for deprivation of liberty without due process of law. Id.

Harris also contends that his detention beyond the expiration of his term violated the Eighth Amendment's prohibition against cruel and unusual punishment. "Subjecting a prisoner to detention beyond the termination of his sentence has been held to violate the eighth amendment's proscription against cruel and [un]usual punishment." Moore v. Tartler, 986 F.2d 682, 686 (3d Cir. 1993); see also Sample v. Diecks, 885 F.2d 1099, 1108 (3d Cir. 1989) ("[T]here can be no doubt that imprisonment beyond one's term constitutes punishment within the meaning of the eighth amendment"). In Sample, the Third Circuit held that to establish

---

[4] The Fifth Amendment provides that no person shall be "deprived of life, liberty, or property without due process of law." U.S. Const. amend. V. Similarly, the Fourteenth Amendment states that **no State** shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV (emphasis added). I assume that Harris's Fifth Amendment claim and his claim under the United States Code relating to a federal statutory good time provision relate to the previously dismissed claim against federal prison officials at Allenwood. As noted in the statement of facts, Harris has previously commenced legal proceedings against these same officials in the Middle District of Pennsylvania, and that is certainly the proper venue to have aired his complaints regarding these federal officials. As I indicated in my earlier recommended decision dismissing the two federal officials, I can ascertain no basis for their liability on the claim against the State of Maine.

§ 1983 liability for incarceration without penological justification, a plaintiff must demonstrate three elements. First, a plaintiff must demonstrate that a prison official had knowledge of the prisoner's problem and thus of the risk that unwarranted punishment was being, or would be, inflicted. Second, the plaintiff must show that the official either failed to act or took only ineffectual action under the circumstances, indicating that his response to the problem was a product of deliberate indifference to the prisoner's plight. Finally, the plaintiff must show a causal connection between the official's response to the problem and the unjustified detention. Sample, 885 F.2d at 1110.

  Given the undisputed facts of this case, I have no difficulty finding that Maxwell, Rackliff, and McHatten were aware of "the risk that unwarranted punishment was being, or would be, inflicted" by continuing to hold plaintiff in custody. Id. The summary judgment record and undisputed documents referenced in the Complaint disclose that Harris informed these defendants as early as 2005 that they were, in effect, lengthening his sentence beyond the period of imprisonment contemplated by the trial court. (See Compl. Pl.'s Exs. 1-4, Burnheimer's response to Harris's letters, May 23, 2005.) However, the same documents and the Complaint show that defendants neither failed to act nor took ineffectual action under the circumstances. Defendants responded to Harris's queries, as well as queries from an attorney on his behalf. (Compl. Pl.'s Exs. 1-4, McHatten's response to Patterson & Harris, Nov. 27, 2007.) In other words, defendants "were attempting to resolve the confusion over the sentencing order and were taking affirmative steps [throughout plaintiff's incarceration] toward that end." Moore, 986 F.2d at 687. Even viewing the facts in the light most favorable to the plaintiff, it cannot be said that defendants exhibited "deliberate indifference to [plaintiff's] plight." Sample, 885 F.2d at 1110. Furthermore, as the defendants have argued, any causal connection for Eighth

Amendment purposes has been eliminated because the summary judgment record establishes that since April 2011, the State of Ohio is causing Harris's continued detention. Had the State of Maine properly released him on September 20, 2009, he still would be in prison today, and the Maine officials have taken effectual action by insuring that he has been given credit on his Ohio sentence retroactive to September 20, 2009. If ultimately as Harris contends in his request for stay he succeeds in having the Ohio conviction vacated, it is in effect the State of Ohio which has been detaining him since September 20, 2009, not the State of Maine.

That leaves the question of the contours of Harris's claim that defendants violated his procedural and substantive due process rights under the Fourteenth Amendment.[5] Many courts have held that continuing detention of a prisoner after his lawful release violates the prisoner's Fourteenth Amendment right to liberty. See, e.g., Alexander v. Perrill, 916 F.2d 1392, 1397 (9th Cir. 1990) (characterizing the constitutional obligation as a duty to investigate an allegation that a sentence miscalculation has occurred); see also Davis v. Hall, 375 F.3d 703, 713 (8th Cir. 2004) ("any continued detention unlawfully deprived [prisoner] of his liberty, and a person's liberty is protected from unlawful state deprivation by the due process clause of the Fourteenth Amendment") (citation omitted); Golson v. Dep't of Corr., 914 F.2d 1491, 1990 WL 141470, at *1 (4th Cir. Oct. 2, 1990) (unpublished table decision) ("Incarceration beyond the termination of one's sentence may state a claim under the due process clause and the eighth amendment"); Banks v. York, 515 F. Supp. 2d 89, 115 (D.D.C. 2007) ("there is . . . a 'substantial body of law' recognizing that overdetention violates the Constitution").

---

5  In their memorandum in support of the summary judgment motion, the defendants characterize the Fourteenth Amendment claim as an equal protection claim which they summarily dismiss. Harris's pleadings are a bit opaque on that score, but I think the Fourteenth Amendment claim is more properly characterized as a due process challenge.

However, in order to recover monetary damages under the due process clause, these cases universally recognize that a plaintiff must establish that defendants acted with something more than mere negligence, although the standard may be something other than Eighth Amendment deliberate indifference. Golson, 1990 WL 141470, at *1 (citing Daniels v. Williams, 474 U.S. 327, 334 (1986), and Davidson v. Cannon, 474 U.S. 344, 347-48 (1986)). It would appear that the standard most often employed is "shocks the conscience" outrageousness in terms of a substantive due process violation. The Third Circuit has held that "in a substantive due process challenge to an action taken by an executive branch official, 'the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'" Kaucher v. County of Bucks, 455 F.3d 418, 425 (3d Cir. 2006) (quoting County of Sacramento v. Lewis, 523 U.S. 833, 847 n.8 (1998)). "[T]he exact degree of wrongfulness necessary to reach the 'conscience-shocking' level depends upon the circumstances of a particular case." Id. at 426 (citation omitted). Because I have concluded that on these facts, these officials' conduct was not deliberately indifferent to Harris's rights, it logically follows that their conduct did not exhibit gross negligence or arbitrariness that would shock the conscience. Id.

Harris may also be asserting a procedural due process claim, which I construe as a claim for denial of a liberty interest without sufficient process or "procedural safeguards." (See Compl. ¶ 21 at 4.) The defendants dispose of any due process claim by noting that nothing in these undisputed facts establishes that Harris had a right to be released from custody on September 20, 2009. If the Maine defendants had not miscalculated his Maine sentence, he simply would have gone into Ohio's custody as of that date. He has now retroactively been placed into Ohio's custody as of that date. They note, correctly, that there is no constitutional

right to serve one's incarceration in any particular location, citing <u>Olim v. Wakinekona</u>, 461 U.S. 238 (1983).  Thus Harris's detention in a federal facility between September 2009 and April 2011 was not an infringement of any liberty interest.  Ohio could have just as easily chosen to house him in a federal facility as Maine did.  There was nothing about Harris's conditions of confinement during that time period that constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." <u>Sandin v. Conner</u>, 515 U.S. 472, 484 (1995) (implicating due process).

If Harris hopes to recover monetary damages for his illegal detention by the State of Maine from September 20, 2009, to April 11, 2011, he would first have to present evidence that he was entitled to be released from custody on September 20, 2009.  He has failed to make that presentation and indeed is unable to do so until and unless a court decides that Harris's Ohio judgment was ineffective as of September 20, 2009, an unlikely prospect on the record before this Court.  Harris wants me to stay this action to give him the opportunity to attempt to obtain a favorable ruling in his Ohio case.  However, even if Harris were to obtain a favorable ruling in the Ohio case, it appears to me that these defendants would be well situated to raise a qualified immunity defense, something they have not yet done.  While the law was arguably clearly established in 2005 that classification officers had a duty to investigate claims of detention beyond the expiration of a sentence, in the absence of deliberate indifference or conscience-shocking outrageousness, there is no clearly established precedent holding correctional officers liable for mistaken calculations based upon a legitimate misunderstanding regarding complicated good time deductions.  Thus there is no reasonable basis upon which I would order a stay of this case pending further litigation in Ohio.

**Conclusion**

Based upon the foregoing, I recommend that the Court grant the defendants' motion for summary judgment. I also deny Harris's motion to stay this action.

**NOTICE**

   A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.
   Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

                  /s/ Margaret J. Kravchuk
                  U.S. Magistrate Judge

August 3, 2012